Opinion filed April 17, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed April 17,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00230-CR 

                                                     __________

 

                                   FERNANDO
PADILLA, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 385th District Court 

 

                                                        Midland
County, Texas

 

                                                 Trial
Court Cause No. CR32029

 



 

                                                                   O
P I N I O N

Fernando
Padilla was indicted for aggravated assault with a deadly weapon, for
aggravated assault causing serious bodily injury, and for burglary of a
habitation.  The jury convicted Padilla of aggravated assault with a deadly
weapon and of burglary of a habitation.  It assessed his punishment at ten
years confinement and a $2,500 fine for the aggravated assault conviction and
fifteen years confinement and a $2,500 fine for the burglary conviction.  We
affirm.








I.
Background Facts

Padilla
and the victim were involved in a relationship for two years.  Their
relationship ended prior to the assault, although Padilla continued leaving
notes on her door complaining of her new boyfriend and expressing his love for
her.  The victim testified that, on the night of the assault, she went out with
a couple of friends and returned home around 10:00 p.m.  When she got home, she
made some phone calls, took a shower, and then fell asleep.  She woke up
suddenly and saw Padilla standing over her bed.  He started punching her and
said, AI told you I
was going to kill you, and if I couldn=t
have you, nobody would.@ 
The victim tried to defend herself by pushing and kicking Padilla.  She also
attempted to reach for the phone, but Padilla hit her on the head with a Baby
Jesus statue that was by her bed.  

Padilla
pulled the victim off her bed when he saw that she was bleeding.  She asked him
to take her to the hospital.  He refused, saying that his friends had dropped
him off.  He did take her to the bathroom and tried to wash the blood off her
head.  He also tried to clean the wall and floor and to wash her sheets.  The
victim again asked Padilla to help her, but he once more refused saying that he
would go to prison.  Padilla spent the remainder of the night at the victim=s house.

The
victim=s boss, Audrey
Glen Wigginton, came to her house the following morning looking for her because
she was not answering her phone.  She answered the door and asked him to call
911.  Wigginton testified that she had crawled to the door and was bleeding. 
He called 911.  He also entered her house and saw Padilla inside.  Padilla
approached him and said, AI
didn=t do that.@  Wigginton told Padilla
that he had called 911, and Padilla fled.  The victim suffered bruising and
swelling on the left side of her face, a fracture of the orbit of the left eye
socket, a cracked cheekbone and nasal bone, a laceration on her scalp, and
superficial scratches on her shoulders.  

II.
Issues on Appeal

Padilla
raises seven issues on appeal.  In three issues, he asserts that the evidence
was legally and factually insufficient to sustain the jury=s guilty verdicts or to
overcome his defensive theory.  Padilla asserts in the next three issues that
the trial court erred by admitting evidence of an extraneous offense, by
failing to admit evidence of the victim=s
pending DWI, and by allowing the testimony of his cell-mate.  Finally, Padilla
asserts that the trial court erred when it removed a reasonable doubt
instruction from the jury charge. 








                                                                    III. 
Analysis

A. 
Legal and Factual Sufficiency of the Evidence.

1.  Standard of Review.

To
determine if the evidence is legally sufficient, we review all of the evidence
in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Jackson
v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  The factfinder is the
sole judge of the credibility of the witnesses and the weight to be given their
testimony.  Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App.
1992). The factfinder may choose to believe or disbelieve all or any part of
any witness=s
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.1986).

To
determine if the evidence is factually sufficient, the appellate court reviews
all of the evidence in a neutral light.  Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006).  Then, the reviewing court determines whether
the evidence supporting the verdict is so weak that the verdict is clearly
wrong and manifestly unjust or whether the verdict is against the great weight
and preponderance of the conflicting evidence.  Id. at 414-15.

2.  Aggravated Assault with a Deadly Weapon.

A
person commits an aggravated assault if he intentionally, knowingly, or
recklessly causes bodily injury to another and if he uses or exhibits a deadly
weapon during the commission of the assault. Tex.
Penal Code  Ann. '
22.02(a)(2) (Vernon 2006).  A deadly weapon can be anything that in the manner
of its use or intended use is capable of causing death or serious bodily
injury.  Tex. Penal Code  Ann. ' 1.07(a)(17)(B) (Vernon
Supp. 2007). Serious bodily injury is defined as Abodily
injury that creates a substantial risk of death or that causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of
any bodily member or organ.@ 
Tex. Penal Code  Ann. ' 1.07(a)(46) (Vernon Supp.
2007).  In this case, the State alleged that the deadly weapon was a statue of
Baby Jesus.  We must determine if there is sufficient evidence to show that
Padilla used or intended to use the statue in such a way that it was capable of
causing death or serious bodily injury.  Alvarez v. State, 566 S.W.2d
612, 614 (Tex. Crim. App. 1978).








Padilla
argues that the evidence failed to establish that he used the statue to strike
the victim because she changed her story several times while his testimony was
clear and because of the lack of forensic evidence connecting him to the
statue.  On direct, the victim testified that Padilla hit her with a Baby Jesus
statue that was beside her bed.  Officer Richard Candelaria interviewed the
victim at the emergency room.  She told him that Padilla had used a weapon. 
Officer Candelaria also testified that an ID tech found a weapon in her bedroom. 
Trial testimony revealed that the statue had blood on both the inside and
outside.

On
cross-examination, the victim testified that she remembered giving a statement
to Officer Candelaria the next day in the hospital.  She did not remember
telling him that Padilla hit her with the statue as soon as she woke up. 
Counsel showed her a copy of the statement.  She read it, reiterated that she
did not remember saying that, and conceded that her trial testimony differed
from her statement.  Padilla then impeached the victim with her prior testimony
from a bond hearing where she testified that she did not remember Padilla
picking anything up and hitting her with it.  She also testified at the
hearing, AI don=t remember reaching for the
phone. I rememberBI
don=t knowBhe hit me with a statue or
something that was there.@ 
Finally, she agreed that it was difficult for her to remember everything that
happened that night.

Padilla
testified that the victim attacked him first.  He tried to calm her down and,
in the process, hit her in the face a few times with his fist.  He specifically
denied hitting her with a statue. He testified that the statue was broken when
it fell off the nightstand and hit him.  He claimed that the victim was injured
when they fell off the bed and she hit her head on the headboard.








Applying
the applicable standards of review, we find that the evidence is legally and
factually sufficient to show that Padilla committed aggravated assault with a
deadly weapon.  It is undisputed that Padilla injured the victim, that a statue
was broken during their struggle, and that this statue had blood on it and in
it when the police arrived.  The question is whether Padilla injured her with
his fists alone or if he also used the statue.  Padilla correctly points out
that the victim=s
memory was not perfect and that her statements were not always completely
consistent.  Whether to believe her trial testimony is ultimately a credibility
determination.  If believed, the victim=s
testimony alone is sufficient to support a guilty verdict.  A rational juror
could also consider the evidence corroborating her testimony and determine that
Padilla was guilty of aggravated assault beyond a reasonable doubt.  We overrule
Padilla=s first issue.

3.  Burglary of a Habitation.

Padilla
argues that the evidence is legally and factually insufficient to support a
guilty verdict for burglary of a habitation because he believed that he had the
victim=s consent to
enter her house.  A person commits a burglary of a habitation if, without the
effective consent of the owner, he either enters a habitation with the intent
to commit a felony, theft, or an assault or enters a habitation and actually
commits a felony, theft, or an assault.  Tex.
Penal Code Ann. '
30.02(a) (Vernon 2003). 

Padilla
testified that he moved in with the victim while they were dating in 2004 and
that the victim kicked him out in February 2005.  This happened several times
over the course of their relationship.  Padilla testified that in 2006 they
were still seeing each other but that he was not living with her.  He also
testified that he had snuck into her house through the window several times and
that, on other occasions, the victim would leave the back door open for him. 
Padilla testified that, on the day of the incident, the victim called him and
said that she wanted to see him.  Later that night, he drove past her house,
but she was not home.  He parked at the Walgreens=
parking lot and walked to her house.  He jumped the back fence and entered the
house through a window.  

On
cross-examination, the State impeached Padilla with a criminal trespass
charge.  Padilla acknowledged that he was arrested on February 9, 2005, for
criminal trespass of the victim=s
home but said that the criminal trespass charges were subsequently dismissed. 
He also conceded that the victim would not give him a key to her house.   He
denied knowing that she was seeing someone else but admitted that, around the
time of the assault, he left several notes on her door complaining of her
boyfriend, expressing his continued love for her, and warning her not to A[f]C up.@ 
Officer Candelaria interviewed Padilla and took a recorded statement.  This
statement was played for the jury.  During the interview, Padilla told Officer
Candelaria that he did not have permission to be in her house, that he did not
know why he went there, and that he was drunk that night.








The
victim testified that she and Padilla were intimate but that they did not ever
live together.  He did not have a key to her house, and he only stayed there a
couple of nights when he was too drunk to go home.  She broke off the
relationship in March 2006.  The victim stated that she did not know how
Padilla got into her house the night she was assaulted because the doors were
locked.  She denied ever letting him into her house in the middle of the night.

The
evidence is legally and factually sufficient to show that Padilla did not have
the victim=s consent
to enter her home that night.  The victim denied giving him consent.  Padilla
told the police that he did not have permission to enter the house and that he
parked a block away from her house rather than at it.  At trial, he admitted
that he did not enter through an open door but through a window.  Just as the
jury could reasonably accept the victim=s
version of the assault over his, it could likewise accept her consent testimony
over his. We overrule Padilla=s
second issue. 

4.  Self-defense.

Padilla
next contends that the State did not overcome his defensive theory of
self-defense.   A person is justified in using force against another when the
actor reasonably believes that the force is immediately necessary to protect
the actor against the other=s
use or attempted use of unlawful force. Tex.
Penal Code Ann. '
9.31(a) (Vernon Supp. 2007).  The defendant has the initial burden to produce
some evidence to support a self-defense claim.  The State then has the burden
of persuasion to disprove it.  Zuliani v. State, 97 S.W.3d 589, 594-95
(Tex. Crim. App. 2003).  

Viewing
all of the evidence in the light most favorable to the verdict, it is legally
sufficient.  The victim testified that Padilla was the aggressor and that he
assaulted her.  A rational juror could have believed her testimony and rejected
Padilla=s self-defense
claim.

A
factual sufficiency review of the jury=s
decision is more nuanced because of the shifting burdens.  Padilla argues that
the State=s burden is
to disprove his defense beyond a reasonable doubt.  The court in Zuliani
held that the defendant bears the full burden of proof on an affirmative
defense under Tex. Penal Code Ann.
' 2.04 (Vernon 2003)
and that the defendant bears the burden of production and the State the burden
of persuasion on a defense under Tex.
Penal Code Ann. '
2.03 (Vernon 2003).  Zuliani, 97 S.W.3d at 594 n.5.  








Self-defense
is classified as a defense. Id. at 594.  The burden of persuasion is not
one that requires the production of evidence but requires only that the State
prove its case beyond a reasonable doubt.  Saxton v. State, 804 S.W.2d
910, 913 (Tex. Crim. App. 1991).  Thus, when conducting a factual sufficiency
review, the inquiry is whether there was sufficient evidence for a reasonable
juror to disbelieve the self-defense testimony.  Juarez v. State,
961 S.W.2d 378, 385 (Tex. App.CHouston
[1st Dist.] 1997, pet. ref=d). 
We review all of the evidence in a neutral light and ask whether the State=s evidence taken alone is
too weak to support the finding and whether the proof of guilt, although
adequate if taken alone, is against the great weight and preponderance of the
evidence.  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Padilla
testified that, when he approached the victim=s
bed, she woke up and attacked him.  Pictures of him with scratches on his face
and a bruise on his arm were entered into evidence.  He admitted hitting the
victim a few times in the face but contended that he did so to calm her down. 
On cross-examination, he testified that he had been drinking that night and
that, when he drinks, he becomes a different person.  He also admitted that it
was unnecessary to hit the victim enough to blacken her eye or bruise her face
to defend himself.  The victim testified that, when she woke up and saw
Padilla, he started punching and threatening her.  Pictures of the victim show
significant bruising, two black eyes, and several cuts.  Medical testimony
established that she had multiple fractures.  Pictures of the victim=s house show blood on the
floor, in the bathroom, and on her bed. 

The
pictures of Padilla and his testimony are some evidence of self-defense. The
State, therefore, had the burden of persuasion.  There was factually sufficient
evidence for a rational juror to disbelieve Padilla and to conclude that he was
the aggressor or that the force he used was unreasonable.  The evidence is
neither too weak to support the jury=s
finding nor is that finding against the great weight and preponderance of the
evidence.  We overrule Padilla=s
third issue.

B.  
Admission of Evidence.

1.  Standard of Review.

A
trial court=s decision
to admit or exclude evidence is reviewed under an abuse of discretion standard. 
Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  An appellate
court will not reverse a trial court=s
ruling unless that ruling falls outside the zone of reasonable disagreement.   Id. 
Evidence is relevant if it has the tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence.  Tex. R. Evid. 401.  Generally, relevant evidence is admissible. 
Tex. R. Evid. 402.  Relevant
evidence may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the jury
or by considerations of undue delay or needless presentation of cumulative
evidence.  Tex. R. Evid. 403.     

 








2. 
Extraneous Offense Testimony.

Padilla
asserts that the trial court abused its discretion when it admitted evidence
that he drove by the victim=s
workplace and threatened to kill her.  He asserts that the evidence was not
relevant under Rules 401 and 402 and that, if it was relevant, it failed to
meet the prejudicial balancing test in Rule 403.  He also asserts that he
failed to receive notice of the extraneous offense as required by Tex. R. Evid. 404(b).

The
victim testified that Padilla would drive past her place of work and say, AI=m going to kill you, B_ . . . . @ 
After a hearing outside the presence of the jury, the trial court overruled
Padilla=s objection
and denied his motion for mistrial.  However, the court gave the jury a
limiting instruction to only consider the extraneous evidence if the jury
believed the incident occurred beyond a reasonable doubt and only for the
purpose of determining intent, knowledge, identity, motive, or common plan or
scheme.

The
State was required to show that Padilla intended to cause the victim serious
bodily injury to prove that he committed an aggravated assault.  Evidence that
Padilla was threatening her before the assault goes to the heart of Padilla=s intent.  Furthermore, the
probative value of the evidence was not substantially outweighed by unfair
prejudice.  Padilla=s
threat was only mentioned during the victim=s
testimony.  The State did not pursue the testimony further and did not discuss
the evidence in closing argument.  Also, the court gave the jury a limiting
instruction both at the time the evidence was admitted and later in the jury
charge.      

The
State admits that it did not notify counsel of this specific testimony.  The
trial court, therefore, erred when it admitted the testimony.  See Hernandez
v. State, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) (It is error to admit
Rule 404(b) evidence when the State does not comply with the rule=s notice provisions.).  
Before we can reverse, however, we must analyze this error for harm.  When the
court erroneously admits Rule 404(b) evidence over a valid notice objection, we
do not consider whether the evidence affected the jury=s verdict because the evidence is
substantively admissible.  Instead, we consider how the lack of notice affected
the defendant=s
ability to prepare a defense to the wrongfully admitted evidence.  Id.
at 825.








Padilla
made no showing in the trial court that his defensive strategy would have been
different if the State had given him proper notice or that his defense was
injuriously affected by the lack of notice.  Nor does Padilla claim in his
brief that the lack of notice prejudiced his ability to prepare or present his
defense to the wrongfully admitted evidence.  Because no harm is shown, Padilla=s fourth issue is
overruled.

3.  Victim=s
Pending DWI Charge. 

Padilla
argues that the trial court should have allowed evidence of the victim=s prior inconsistent
statement regarding a pending DWI charge.  While cross-examining the victim,
Padilla attempted to establish that the victim represented to the Permian Basin
Community Center that she did not have any legal problems even though she had a
pending DWI.  The State objected.  Padilla argued that the testimony was
admissible as a prior inconsistent statement.   The trial court ruled that the
testimony was inadmissible but left open the possibility that it could become
admissible if the victim misled the jury. 

Padilla
made an offer of proof.  He asked the victim if she remembered going to the
Crisis Assessment Center and completing some forms.  She testified that she did
not. When asked why someone would have checked a box Ano@
regarding legal problems, she testified that she did not know.  When asked if
she were going through legal problems at that time, she said no and, in
response to a subsequent question, testified that she had a DWI that had been
pending for two years but that she did not consider it a legal problem.

Witnesses
may be impeached with prior inconsistent statements.  Tex. R. Evid. 613(a).  The statement, however, must be
inconsistent with the witnesses=
trial testimony.  2A Steven Goode et al., Texas Practice:  Courtroom
Handbook on Texas Evidence 613 (2007 ed.).  Assuming that a pending DWI is
a legal problem and that the box on the Crisis Center=s form should have been checked Ayes,@ Padilla does not point to any inconsistent
trial testimony.  We note also that the trial court, in its exercise of
discretion, could have taken into account the fact that a pending charge is
normally not admissible because it is not a final conviction as required by Tex. R. Evid. 609 and that specific
instances of a witness=s
conduct may not be used to bolster or attack their credibility.  Tex. R. Evid. 608(b).  Finally, because
the victim testified that she did not remember completing any forms at the
Crisis Assessment Center, the trial court could have also considered the lack
of authentication.  The trial court did not abuse its discretion by excluding
evidence of the victim=s
pending DWI.  Padilla=s
fifth issue is overruled.








4.  Testimony of Padilla=s
Cell-Mate.

The
State offered testimony from Kevin Land who was incarcerated with Padilla
before trial.  Land testified that Padilla told him that Ahe would have been better
off if he had just killed her.@ 
Padilla objected to Land=s
testimony under Rule 403.  In a Rule 403 analysis, a trial court must balance
(1) the inherent probative force of the proffered item of evidence along with
(2) the proponent=s
need for that evidence against (3) any tendency of the evidence to suggest
decision on an improper basis, (4) any tendency of the evidence to confuse or
distract the jury from the main issues, (5) any tendency of the evidence to be
given undue weight by a jury that has not been equipped to evaluate the
probative force of the evidence, and (6) the likelihood that presentation of
the evidence will consume an inordinate amount of time or merely repeat
evidence already admitted.  Gigliobianco v. State, 210 S.W.3d 637, 640
(Tex. Crim. App. 2006).

In
this case, the probative value of Land=s
testimony was considerable.  At a minimum, it combated his self-defense
theory.  It also shed light on his intent.  Because the jury was required to
determine Padilla=s
intent, the evidence did not suggest a decision on an improper basis.  The jury
was unlikely to give Land=s
testimony undue weight because it was well aware of his potential bias. 
Counsel established that Land received a favorable sentence in exchange for
testifying and that Land was a member of a white supremacist group.  Land=s testimony was short, and
it did not distract or confuse the jury.  The trial court did not abuse its
discretion by allowing Land=s
testimony.  We overrule Padilla=s
sixth issue. 

C. 
Reasonable Doubt Instruction in Jury Charge.

The
original court=s
charge contained an instruction on the definition of Abeyond a reasonable doubt.@  Neither party objected to
the inclusion of this instruction.  While reading the charge to the jury, the
trial court realized that the instruction was in the charge and called counsel
to the bench.  The trial court informed them that it did not believe the
instruction should be in the charge and that the instruction would be removed. 
Padilla objected to removing the instruction because neither party had objected
to its inclusion. 








A
trial court must submit a written charge to the jury setting forth the law
applicable to the case.  Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon 2007).  An instruction on the definition
of Abeyond a
reasonable doubt@ was
once a required element.  See Geesa v. State, 820 S.W.2d 154
(Tex. Crim. App. 1991).  But this requirement was eliminated by Paulson v.
State, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).  In Paulson, the
court held that it is a better practice to not define reasonable doubt;
however, the court also stated that, Aif
both the State and defense were to agree to give the Geesa instruction
to the jury, it would not constitute reversible error for the trial court to
acquiesce to their agreement.@
Id.  This does not mean that the court is bound by the parties= agreement or that, if the
court notices that an unrequested Geesa instruction was somehow included
in the charge, it cannot remove it.  The trial court was within its discretion
to remove the instruction.  We overrule Padilla=s
seventh issue. 

IV. 
Holding

We
affirm the judgment of the trial court. 

 

 

RICK STRANGE

JUSTICE

April 17, 2008

Publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:   Wright,
C.J.,

McCall, J., and Strange, J.